UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) Cause 4:12CR00375 CDP (SPM) |
| vs. | ) |
| | ) |
| REGINALD FARMER, | ) |
| Defendant. | ) |

# REPORT AND RECOMMENDATION
# OF UNITED STATES MAGISTRATE JUDGE

In accordance with the Memorandum filed herein,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion to Suppress Evidence [Doc. 24] and Motion to Suppress Statements [Doc. 25] be **DENIED.**

**IT IS FURTHER RECOMMENDED** that, the United States' Motion for Pretrial Determination of the Admissibility of Defendant's Statements, pursuant to 18 U.S.C. §3501, should be granted and Defendant's statements should be deemed admissible at trial [Doc. 18].

The parties are advised that they have **fourteen (14)** days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

Trial in this case has been set on **February 19, 2013,** at **8:30 a.m.** before the Honorable Catherine D. Perry.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE


Dated this <u>2nd</u> day of January, 2013.

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) Cause 4:12CR00375 CDP (SPM) |
| vs. | ) |
| | ) |
| REGINALD FARMER, | ) |
| Defendant. | ) |

## **MEMORANDUM**

This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §636(b). Defendant Reginald Farmer ("Defendant") was arrested on February 8, 2012, after an undercover detective with the City of Hazelwood's Violent Crimes Task Force observed Defendant sell crack cocaine to Darrick Ward ("Ward"). Defendant was arrested after the officers apprehended Ward and seized the drugs he purchased from Defendant and after a search of Defendant's vehicle yielded cash and a pill bottle containing crack cocaine and marijuana.

On October 10, 2012, a Federal Grand Jury returned an indictment charging Defendant with one count of distribution of 28 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1). On October 31, 2012, the United States filed a Motion for Pretrial Determination of the Admissibility of Defendant's Statements under 18 U.S.C. §3501. [Doc. 18]. On November 21, 2012, Defendant,

1

represented by David Bruns, filed a Motion to Suppress Physical Evidence [Doc. 24] and a Motion to Suppress Statements. [Doc. 25]. Assistant United States Attorney Sayler Fleming filed a response on behalf of the United States. [Doc. 28].

In his motions, Defendant urged the Court to suppress physical evidence, including cocaine base, marijuana, and United States currency, that was seized from Defendant's person and vehicle. *See* [Doc. 24]. Defendant argued that the officers did not have probable cause to search his vehicle or his person and, therefore, such a warrantless search violated his Fourth Amendment rights. *Id.* at pp. 3-5. Defendant also maintained that statements to law enforcement were made "concurrently with the illegal search and seizure of his vehicle" and, therefore, "should be excluded as 'fruits of the poisonous tree.'" *See* [Doc. 25, at pp. 3-5]. Defendant further contended that statements made to law enforcement should be excluded because they were made in violation of his *Miranda* rights. *Id.* at pp. 4-6.

The undersigned held an evidentiary hearing on Defendant's motions on December 10, 2012. The United States presented testimony of Detective Ryan Counterman of the St. Louis North County Violent Crimes Task Force. The United States also offered into evidence an aerial photograph depicting the parking lot in which Defendant was arrested. (Exhibit No. EH-1). Defendant presented no rebuttal witnesses or evidence. Based upon the evidence adduced at the hearing,

and the written submissions of the parties, the undersigned makes the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Detective Ryan Counterman has been a police officer with the City of Hazelwood for almost 9 years. He is assigned to the Violent Crimes Task Force, which was formerly known as the "MEG Unit"[1] and has been with that unit for approximately 5 years. The purpose of the unit is to help control narcotics transactions in the City of Hazelwood. Before joining the MEG Unit Detective Counterman was a patrolman for the City of Hazelwood. Detective Counterman graduated from the St. Louis County Police Academy in 2003. He is certified by the State of Missouri as a Police Officer.

2. During his time as a police officer, Detective Counterman has been involved in over 2500 drug transactions. Based on his experience he is familiar with how illegal drug transactions are conducted, including "hand to hand" drug transactions. Detective Counterman is also familiar with what illegal drugs such as crack cocaine and marijuana looks like and the ways in which they are sold. Due to his experience, Detective Counterman is also familiar with what marijuana smells like.

3. On February 8, 2012, Detective Counterman was assigned to conduct surveillance in the area of Home Décor, located at 8780 Pershall, in Hazelwood,

---

[1] MEG stands for Municipal Enforcement Group.

Missouri. Detective Counterman was familiar with the area through his work as a police officer and was aware that the area is known for narcotics trafficking. Detective Counterman testified that he was conducting surveillance on the afternoon of February 8, 2012 as a result of a high volume of drug-trafficking occurring in the area.

4. Detective Counterman began surveillance of the area around 1 p.m. in a covert police vehicle. In addition to Detective Counterman, Sergeant Shane Parrish and members of the Drug Enforcement Administration ("DEA") Task Force Group 33 were also conducting surveillance of the area.

5. During the surveillance, Detective Counterman observed the driver of a Chevrolet Impala, later identified as Darrick Ward ("Ward"), pull into a parking space on the Home Decor parking lot just a few parking spaces north of Detective Counterman's covert vehicle. Detective Counterman also observed a Chevrolet truck enter the Home Décor parking lot and park just a few spaces south of Detective Counterman's covert vehicle. *See* Exhibit EH-1.

6. Ward exited his vehicle carrying a large amount of U.S. currency fanned out in his hand and approached the driver of the Chevrolet truck. When Detective Counterman first observed the driver of the Chevrolet truck, later identified as Defendant, he had already exited the truck and was standing on the passenger side. Defendant's passenger, later identified as Tony Harmon

4

("Harmon"), also exited Defendant's truck. Detective Counterman's covert vehicle was parked near both Ward's and Defendant's vehicles and the Detective had an unobstructed view of both men and their respective vehicles.

7. Detective Counterman observed Ward hand Defendant the cash and observed Defendant hand Ward a large, clear plastic bag containing what appeared to Detective Counterman to be a fairly large amount of crack cocaine. At the time of the exchange both men were standing near the passenger side door of Defendant's vehicle. Ward then returned to his vehicle.

8. After the exchange, Detective Counterman observed Defendant contact Harmon and point to the undercover vehicle. Defendant and Harmon then went into Home Decor.

9. After Ward returned to his vehicle, Detective Counterman observed him showing something to his passenger, later identified as Ronda Gordon ("Gordon"). Ward then pulled out of the parking lot. Detective Counterman and Sergeant Parrish, who was driving a different vehicle, followed Ward.

10. After following Ward's vehicle for approximately a half mile, Detective Counterman pulled Ward over on Hanley Road near Frost. Upon questioning, Ward informed the officers that he had just purchased some marijuana and patted the left side of his jacket. With Ward's consent, Detective Counterman searched him and discovered two small bags of rock cocaine in Ward's jacket

pocket. After Detective Counterman read Ward his rights, Ward indicated he wished to speak with the officer. When asked why he gave Defendant so much cash, in exchange for the small quantity of drugs Ward stated, "I am going to prison for twenty years" and indicated that he had given the rest of the crack cocaine to his passenger, Ms. Gordon, and she put the drugs down her pants. A search of Gordon revealed a large plastic bag containing crack cocaine. After she was searched, Ms. Gordon indicated that Mr. Ward had given the crack cocaine to put down her pants.

11.  While conducting his traffic stop of Ward and Gordon, Detective Counterman contacted the DEA task force officers to inform them of what he had observed and learned. Detective Counterman then returned to the Home Décor parking lot, where DEA task force officers, TFO Fagan, Agent Baratti, and TFO Tachner were continuing their surveillance.

12.  Upon arriving at the Home Décor parking lot, Detective Counterman observed Defendant, Harmon, and a store employee exit Home Decor with a large board and walk toward Defendant's truck. As Defendant opened the driver's side door, Detective Counterman and the three DEA agents approached the men on foot. Although they approached *en masse* the officers did not have weapons drawn, did not order Defendant or Harmon to stop, and did not attempt to place the men in handcuffs or otherwise restrict their movement. Rather, the officers walked

up to Defendant and Harmon and Detective Counterman advised Defendant of the suspicious transaction he previously observed between Defendant and Ward.

13. While speaking to Defendant, Detective Counterman smelled the odor of marijuana emanating from inside the truck. When asked if he had been smoking marijuana inside his vehicle, Defendant responded that he and Harmon had smoked marijuana on their way to Home Decor.

14. Detective Counterman then requested a K-9 unit to come to the scene. In response, K-9 Unit Officer Monticelli and his canine partner "Onyx" arrived at the scene about one minute after they were called. Onyx positively alerted to the odor of narcotics in the center console. Agent Baratti then searched the console and found a large amount of U.S. currency in plain view on top of the center console and an orange pill bottle containing six bags of suspected cocaine base and five bags of suspected marijuana inside the console. Agent Baratti seized the cash and drugs. Neither Defendant nor Harmon was handcuffed during the search of the vehicle.

15. Defendant was then placed under arrest for possession of controlled substances and handcuffed. A search incident to the arrest of Defendant revealed a large amount of U.S. currency in Defendant's right front pocket. The total amount of cash seized from Defendant's person and vehicle exceeded $3,000. At that point, Detective Counterman advised Defendant of his *Miranda* rights, and

Defendant indicated that he understood and made no further statements.  When Defendant was read his rights, there were no weapons drawn and the officers made no threats or promises to Defendant.

16. Defendant was transported to the Hazelwood Police Department and placed in an interview room.  As Officer Counterman entered the interview room, Defendant asked why he was being arrested.  Officer Counterman advised Defendant he was being arrested for possession of controlled substances to which Defendant responded that that was just his "smoke" in the vehicle.  Defendant was re-advised of his *Miranda* rights, but declined to make any further statements.  Neither Detective Counterman nor any other officer pressed Defendant to subsequently make any additional statement.

## CONCLUSIONS OF LAW

**A. Defendant's Motion To Suppress Physical Evidence Should Be Denied Because The Officers Had Probable Cause to Search Defendant's Person And Vehicle.**

Defendant argues the drugs and cash seized from his vehicle and the cash seized from his person should be suppressed because they were the fruits of a warrantless search unsupported by probable cause.  [Doc. 24].  Probable cause is required to justify most governmental intrusions upon interested protected by the Fourth Amendment.  *See Katz v. United States*, 389 U.S. 347, 357 (1967).  Probable cause exists "when, given the totality of the circumstances, a reasonable

person could believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Mayo*, 627 F.3d 709, 713 (8th Cir. 2010); *see also Illinois v. Gates*, 426 U.S. 213, 238 (1983). A determination that probable cause exists involves a "commonsense, practical question." *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007). It requires the court to first determine the historical facts that occurred leading up to the search and then to determine whether those historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. *Ornelas v. United States,* 517 U.S. 690, 696 (1996).

### 1. *The Officers Had Probable Cause To Search Defendant's Vehicle*

The events leading up to the search of Defendant's vehicle as detailed in the above Findings of Fact are that while conducting surveillance in an area known for a high rate of drug trafficking, Detective Counterman observed Defendant conduct what he believed to be a hand-to-hand drug transaction in a public parking lot in broad daylight. Specifically, Detective Counterman observed Defendant and Ward pull into the parking lot of Home Décor in their respective vehicles. Ward then approached Defendant with a handful of cash, and handed Defendant the cash in exchange for a plastic bag containing what appeared to be cocaine base. Detective Counterman then followed Ward out of the parking lot and ultimately arrested Ward and seized the cocaine base he observed Ward purchase from Defendant.

9

Following Ward's arrest, Detective Counterman returned to the Home Décor parking lot and approached Defendant to question him about the transaction with Ward. Detective Counterman encountered Defendant just as he was opening the door to his truck. While speaking with Defendant, Detective Counterman smelled the odor of marijuana emanating from Defendant's vehicle and Defendant admitted that he and his passenger had smoked Marijuana in the truck on the way to the Home Decor.

The Detective's personal observations of the drug transaction between Ward and Defendant, together with the discovery of the drugs in Ward's possession, Ward's statements at the time of his arrest, the odor of marijuana emanating from Defendant's opened car door as well as Defendant's own admission that he smoked marijuana in the truck on the way to the Home Decor are facts that more than amply support a finding that there was a fair probability that contraband or evidence of a crime would be found in Defendant's truck. *See, e.g., United States v. Jennings,* 2007 WL 2142260, *1 (8th Cir. July 27, 2007) (finding that the odor of burnt marijuana coming from a vehicle gave an officer probable cause to search the vehicle for drugs); *United States v. Peltier*, 217 F.3d 608, 610 (8th Cir. 2000).

This is particularly true in light of the so-called automobile exception to the warrant requirement. "Under the automobile exception, officers may search a vehicle without a warrant if they have probable cause to believe the vehicle

contains evidence of criminal activity." *United States v. Cortez-Palomino*, 438 F.3d 910, 913 (8th Cir. 2006). If probable cause justifies the search of a vehicle, "it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Coleman*, – F.3d –, 2012 WL 5439287, *5 (8th Cir. 2012) (quoting *United States v. Ross*, 456 U.S. 798, 800, 102 S. Ct. 2157, 72 L.Ed.2d 572 (1982)).

For all of the foregoing reasons, the events that occurred leading up to the search of Defendant's vehicle support a finding that there was a *strong* possibility that evidence of Defendant's drug possession or trafficking would be found in Defendant's vehicle. As such, the search of Defendant's vehicle was supported by probable cause and the physical evidence seized from the vehicle should not be excluded as fruits of an illegal search and seizure.

### 2. *The Officers Had Probable Cause to Arrest Defendant and Search His Person Incident to His Arrest.*

Defendant also contends that physical evidence seized from his person at the time of his arrest should be suppressed because there was insufficient probable cause to search his person under the totality of the circumstances. [Doc. 24, p. 4]. "Probable cause to make a warrantless arrest exists when, considering all the circumstances, police have trustworthy information that would lead a prudent person to believe that the suspect has committed or is committing a crime." *United*

*States v. Parish*, 606 F.3d 480, 486 (8th Cir. 2010). In making this determination, "law enforcement officers have substantial latitude in interpreting and drawing inferences from factual circumstances." *United States v. Henderson*, 613 F.3d 1177, 1181 (8th Cir. 2010) (internal quotation marks and citation omitted). "Because probable cause requires only a probability or substantial chance of criminal activity, rather than an actual showing of criminal activity, the police need not have amassed enough evidence to justify a conviction prior to making a warrantless arrest." *United States v. Mendoza*, 421 F.3d 663, 667 (8th Cir. 2005) (citation omitted); *see also United States v. Jones*, 535 F.3d 886, 890 (8th Cir. 2008).

When an officer has arrested an individual, "the officer my search the individual's person incident to that arrest and may reach into his pockets." *United States v. Pratt,* 355 F.3d 1119, 1121 (8th Cir. 2004) (citing *United States v. Robinson*, 414 U.S. 218, 226, 236, 94 S. Ct. 467, 38 L.Ed.2d 427 (1973)). "A search incident to arrest is justified by the concern for officer safety and the need to collect evidence of the offense." *Pratt*, 355 F.3d at 1121.

The facts here justified the warrantless arrest and, thus, the search incident to the arrest was lawful. Each of the reasons supporting the search of Defendant's vehicle gave the officers ample reason to believe that Defendant was involved in criminal activity when they effectuated his arrest. In addition, while searching

Defendant's vehicle, officers discovered additional narcotics, including cocaine base and marijuana, and a significant amount of cash laying on top of the center console. This evidence further bolstered their probable cause determination.

Under the totality of the circumstances, the officers were justified in searching Defendant's person incident to his arrest. Accordingly, the U.S. currency discovered in and seized from Defendant's pocket during the search should not be suppressed.

### B. Defendant's Motion To Suppress Statements Made To Law Enforcement As Fruits Of The Poisonous Tree Should Be Denied.

Defendant also argues that statements to law enforcement were made "concurrently with the illegal detention and search of defendant and his vehicle" and, therefore, should be excluded as "fruits of the poisonous tree." *See* [Doc. 25, at pp. 3-5]. This argument lacks merit for at least two reasons.

First, it is well established that "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow,* 528 U.S. 119, 123 (2000) (citing *Terry v. Ohio,* 392 U.S. 1, 20 (1968)). For the reasons detailed above, the officers' decision to stop and question Defendant and to search his vehicle was more than amply supported by "reasonable suspicion" that criminal activity was afoot. Because the pre-arrest stop and vehicle search in this case were well within the protections afforded under the Fourth Amendment, Defendant's

pre-arrest statements to law enforcement are not subject to exclusion as fruits of the poisonous tree.

Second, none of Defendant's statements (either at the scene or following his arrest) were the product of custodial interrogation. The protections set forth by the United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436 (1966), are triggered only when a defendant is both in custody and being interrogated. *United States v. Hatten*, 68 F.3d 257, 261 (8th Cir. 1995). "Interrogation is not limited to express questioning; it includes words or conduct that the officer should know are 'reasonably likely to illicit an incriminating response from the suspect.'" *United States v. Chipps*, 410 F.3d 438, 445 (8th Cir. 2005) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S. Ct. 1682, 1690 (1980)). However, not all statements made while in custody are products of interrogation. Rather, it is well-established that the United States is not precluded from introducing into evidence voluntary or spontaneous statements not in response to an interrogation whether or not *Miranda* warnings are given. *United States v. McGlothen,* 556 F.3d 698, 701 (8th Cir. 2009); *see also Chipps*, 410 F.3d at 445; *United States v. Hawkins,* 102 F.3d 973, 975 (8th Cir. 1996); *Hatten*, 68 F.3d at 262 ("[A] voluntary statement made by a suspect, not in response to interrogation, is not barred by the Fifth Amendment and is admissible with or without the giving of *Miranda* warnings.").

Defendant was not in custody when he informed officers that he and Harmon had smoked marijuana in Defendant's vehicle. Defendant's second statement that the marijuana seized from his vehicle was his "smoke" was not in response to interrogation. Rather, Defendant voluntarily made the statement after being advised by the detective of the offenses he was charged with. Defendant made the statement after he had been advised of his *Miranda* rights. Notwithstanding Defendant's assertions to the contrary, there was no evidence introduced at the hearing to suggest the officers pressed Defendant to make statements after he indicated that he wished to exercise his right to remain silent. Thus, Defendant's statements are admissible.

## **CONCLUSION**

For all of the foregoing reasons, Defendant's motions to suppress physical evidence [Doc. 24] and statements [Doc. 25] should be denied, and the statements made by Defendant should be deemed admissible at trial [Doc. 18].

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE


Dated this 2nd day of January, 2013